UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re

KOSSOFF PLLC,

Debtor.

25 Civ. 2296 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

This appeal arises out of the Chapter 7 bankruptcy proceedings of Kossoff PLLC (the "Debtor" or the "Law Firm"), a law firm whose principal, Appellant Mitchell Kossoff, was found criminally liable in 2021 for misappropriating client funds. United States Bankruptcy Judge David S. Jones, who is overseeing the Law Firm's bankruptcy proceedings, recently determined that it has an outstanding tax liability from 2015, and that the Internal Revenue Service (the "IRS") thus has a valid claim in the Law Firm's bankruptcy proceedings. Mr. Kossoff is one of several parties who contested the IRS's position before the Bankruptcy Court, but he is the only one to have taken an appeal from Judge Jones's decision. For the reasons set forth below, the Court affirms that decision and holds that the IRS has a valid claim against the Law Firm.

## BACKGROUND[1]

### A.    Factual Background

#### 1.    Mr. Kossoff's Underlying Conviction

Mr. Kossoff is a former lawyer who was the principal of the New York City real estate law firm Kossoff PLLC. *In re Kossoff PLLC*, Nos. 22-122-bk, 22-124-bk, 2023 WL 5662748, at *1 (2d Cir. Sept. 1, 2023) (summary order). In December 2021, Mr. Kossoff pleaded guilty to fraud and grand larceny charges in New York state court in connection with his misappropriation of over $14 million in client funds. *In re Kossoff*, 164 N.Y.S.3d 618, 619 (1st Dep't 2022). In response, Mr. Kossoff was disbarred in March 2022, *id.* at 620, after Debtor had been placed in Chapter 7 bankruptcy proceedings, *In re Kossoff PLLC*, 2023 WL 5662748, at *1.

#### 2.    The First Assessment of Debtor's 2015 Tax Liability

The instant appeal concerns certain of Debtor's tax liabilities from 2015 and 2016, when Mr. Kossoff was the principal. In February 2016, Debtor filed

---

[1]    The Court's consideration of this motion is limited to facts presented in the record below. *See In re Ampal-Am. Isr. Corp.*, 554 B.R. 604, 617 (S.D.N.Y. 2016) ("[T]he district court may not consider evidence outside the record below."). Accordingly, the facts set forth in this Opinion are drawn from the record provided in Appellant's designation under Federal Rule of Bankruptcy Procedure 8009 (Dkt. #3) and the docket of the bankruptcy case, No. 21-10699 (DSJ) (Bankr. S.D.N.Y.) ("Bankr. Dkt."), including the transcript of the trial below (Bankr. Dkt. #807 ("Tr.")) and the Decision from which Mr. Kossoff has appealed (Bankr. Dkt. #840 ("Decision")). The Court also relies on the Declaration of Anne Sylvia, an IRS Bankruptcy Specialist (Bankr. Dkt. #766 ("Sylvia Decl.")), as well as Ms. Sylvia's deposition (Bankr. Dkt. #766-1 ("Sylvia Dep.")). Exhibits from the bankruptcy trial have been docketed in this Court at docket entry 10, and they are cited as "TX [ ]" here.

For ease of reference, the Court refers to Appellant Mr. Kossoff's brief on appeal as "Kossoff Br." (Dkt. #11); Appellee United States of America's opposition brief as "IRS Opp." (Dkt. #15); Appellee Albert Togut's opposition brief as "Trustee Opp." (Dkt. #16); and Appellant Mr. Kossoff's reply brief as "Kossoff Reply" (Dkt. #19).

with the IRS an Amended Form 941, which covered the fourth quarter of 2015

(the "Q4 2015 Form 941").  (Sylvia Decl. ¶ 8; TX 9).[2]   The Q4 2015 Form 941

disclosed a tax liability of $382,503.49.  (Sylvia Decl. ¶¶ 7-8; TX 9).  On

March 28, 2016, the IRS assessed a tax liability of $382,503.48 (the "First

Assessment").  (Sylvia Decl. ¶ 8; TX 10).  Debtor began making partial

payments to satisfy this liability.  (Sylvia Decl. ¶ 9; TX 10).

On June 7, 2016, Debtor filed an Amended Form 941 for a different tax

period — the first quarter of 2016 (the "Q1 2016 Form 941").  (Sylvia Decl.

¶¶ 11-12; Tr. 44).  But the IRS did not finish processing this form until

April 23, 2018 — almost two years later.  (Sylvia Decl. ¶ 12; Tr. 152; TX 39).

On June 8, 2016, however, Debtor paid $110,330.94 (the "Disputed Payment")

to the IRS, one cent more than the Q1 2016 Form 941 indicated that it owed.

(Sylvia Decl. ¶ 13; Tr. 44, 222-24; TX 39).  Mr. Kossoff concedes that this

payment was initially intended to satisfy Debtor's first quarter 2016 liability.

(Tr. 222).  At first, the IRS applied the Disputed Payment toward Debtor's first

quarter 2016 liabilities, as Mr. Kossoff intended.  (TX 40; Sylvia Decl. ¶ 15).

This set off a series of shifts in how the IRS allocated the Disputed Payment.

On June 22, 2016, the IRS prepared a notice of federal tax lien to

encumber Debtor's property because part of Debtor's 2015 liability remained

outstanding.  (TX 28).  On July 12, 2016, Mr. Kossoff wrote to the IRS

---

[2]     "Employers use Form 941 to[ ] [r]eport federal income, social security, and Medicare taxes withheld from employee's paychecks[.]"  *About Form 941, Employer's Quarterly Federal Tax Return*, IRS, https://www.irs.gov/forms-pubs/about-form-941 (last visited Dec. 30, 2025).

regarding this lien and referred to the Disputed Payment as "unassigned," but he did not instruct the IRS to apply the Disputed Payment toward the First Assessment.  (TX 29).  Then, later in 2016, the IRS shifted the application of the Disputed Payment to partially cover the First Assessment.  (Sylvia Decl. ¶¶ 13-15; Tr. 138-39, 206; TX 10, 39, 40, 46).  On October 6, 2016, Debtor made a further payment of $116,160.79 toward the First Assessment, which resulted in the IRS releasing, by October 26, 2016, all liens it held on Debtor's property.  (Tr. 115, 126-31; TX 10, 48).

On April 23, 2018, the IRS finished processing the Q1 2016 Form 941. (Sylvia Decl. ¶ 12; Tr. 152; TX 39).  At that time, the IRS assessed $110,330.93 in taxes for first quarter 2016, nearly the exact amount of the Disputed Payment, which Debtor had originally made to the IRS right after filing the Q1 2016 Form 941.  (Sylvia Decl. ¶¶ 12-13; Tr. 131, 222; TX 39).  In response, the IRS shifted the credit resulting from the Disputed Payment from the First Assessment back to cover Debtor's 2016 tax liability, as originally intended. (Sylvia Decl. ¶¶ 13-15; Tr. 131, 222; Sylvia Dep. 69-71; TX 10, 39, 40).  The IRS subsequently sent a notice on May 7, 2018, stating that Debtor owed $110,330.97 on the First Assessment now that the Disputed Payment had been applied toward Debtor's 2016 tax liability.  (TX 18).  On September 12, 2018, Mr. Kossoff responded on behalf of Debtor, acknowledging that the IRS had "erroneously" applied the Disputed Payment to the First Assessment even though it was properly allocable to Debtor's 2016 tax liability.  (TX 19).

4

### 3.     The Second Assessment of Debtor's 2015 Tax Liability

In late 2018 and early 2019, the IRS and the Social Security Administration (the "SSA") performed a Combined Annual Wage Reporting ("CAWR") audit of Debtor's 2015 tax liability.  (TX 11, 31; Tr. 139-40).  This review involves the IRS and the SSA comparing the wages paid and taxed withheld as reported on Forms W-2 and W-3 with those reported on Forms 941.  (Decision 14).[3]  The agencies found a discrepancy in Debtor's forms (TX 15, 16, 31), so on March 19, 2019, the IRS assessed Debtor with an additional $197,762.92 liability for the fourth quarter of 2015 (the "Second Assessment" and together with the First Assessment, the "Assessments") (TX 11; *see also* Sylvia Decl. ¶¶ 20-21 (providing an incorrect calculation)).  In all, Debtor paid $326,160.79 toward satisfying the Assessments (Tr. 157-58; TX 10), but he never fully paid the outstanding liability (Tr. 235-36).

### B.     The Bankruptcy Court Proceeding

### 1.     The Involuntary Petition

After discovering that Mr. Kossoff may have misappropriated client funds that Debtor held, certain of Debtor's creditors filed an involuntary Chapter 7 petition on April 13, 2021.  (Decision 10).  Appellee Albert Togut now serves as Chapter 7 Trustee (the "Trustee") of Debtor's bankruptcy estate.  (*Id.* at 8).  In

---

[3]     Form W-2 is a Wage and Tax Statement that reports employees' incomes and the taxes withheld.  *About Form W-2, Wage and Tax Statement*, IRS, https://www.irs.gov/forms-pubs/about-form-w-2 (last visited Dec. 30, 2025).  Form W-3 summarizes and transmits all Forms W-2 for a given employer.  *About Form W-3, Transmittal of Wage and Tax Statements*, IRS, https://www.irs.gov/forms-pubs/about-form-w-3 (last visited Dec. 30, 2025).

this role, the Trustee must trace and recover misappropriated or otherwise recoverable funds. (*Id.*). The Trustee has commenced dozens of adversary proceedings seeking to secure the turnover of recoverable funds. (*Id.* at 11).

On February 10, 2022, the IRS filed an unsecured claim in this case, Claim 37-1 (the "Original Claim"), asserting that Debtor owed tax liabilities from 2015. (TX 1; Sylvia Decl. ¶ 22). On February 5, 2024, the IRS filed an amended claim, Claim 37-2 (the "Amended Claim" and together with the Original Claim, the "IRS Claims") (TX 2), which corrected the Original Claim's liability figure (Sylvia Decl. ¶¶ 24-25; Sylvia Dep. 46-53; Tr. 98-104).

The Amended Claim reflects Debtor's total liability of $395,206.44 for the fourth quarter of 2015. (TX 2; Sylvia Decl. ¶ 26). The IRS calculated that liability by consulting the Integrated Data Retrieval System ("IDRS"), which is the IRS's definitive record of taxpayers' assessments and balances (Sylvia Decl. ¶¶ 6, 24-25; Sylvia Dep. 38-40, 48-53), as well as other IRS records (Sylvia Decl. ¶ 25; Tr. 106-08). The IRS further conferred with the Trustee and his professionals to verify that the number matched Debtor's books and records. (Sylvia Decl. ¶ 26 & n.5; Sylvia Dep. 193-99).

### 2.    The IRS's Status as a Triggering Creditor

The ensuing proceedings before the Bankruptcy Court involved "an issue with great significance to the Trustee's ability to recover assets to compensate Mr. Kossoff's victims." (Decision 8). The Trustee's power to bring many of his adversary proceedings comes from 11 U.S.C. § 544(b)(1), which states that "the trustee may avoid any transfer of an interest of the debtor in property or any

obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title." This authority allows the trustee "to stand in the shoes of a prepetition creditor to exercise the rights of that creditor." *In re Stephens*, No. 21-42857, 2024 WL 74897, at *17 (Bankr. E.D.N.Y. Jan. 5, 2024). To seek relief under § 544(b), there must be "a 'triggering creditor' whose allowable, unsecured claim dates from the time of the challenged conveyance." *In re Tronox Inc.*, 503 B.R. 239, 275 (Bankr. S.D.N.Y. 2013).

For many of the adversary proceedings in the instant case, the IRS serves as the triggering creditor required to avoid a transfer of interest under § 544(b)(1). (Decision 11). The issue before the Court is thus "whether the IRS has a viable claim such that it qualifies as a triggering creditor." (Decision 9). If the IRS's claim is viable, the Trustee would be able to recover earlier transfers than it otherwise could. (*Id.*).

Recognizing the importance of the issue, the Trustee filed a motion in the Bankruptcy Court under 11 U.S.C. § 505(a) seeking a determination of the Debtor's prepetition tax liability to the IRS (the "Motion"). (Decision 9, 18 & n.2; Bankr. Dkt. #703). The IRS later filed a statement in support of the Motion, along with a declaration by IRS Bankruptcy Specialist Anne Sylvia. (Bankr. Dkt. #765-766). Seven parties in interest, including Mr. Kossoff, opposed the Motion. (Decision 9; *see* Bankr. Dkt. #715, 746-747, 749-750). In addition to Mr. Kossoff, the opponents were six defendants in the Trustee's

7

adversary proceedings for which the IRS serves as a "predicate" or "triggering" creditor under § 544(b)(1). (Decision 9).

The Bankruptcy Court oversaw discovery on the Motion, including a deposition of Ms. Sylvia. (Bankr. Dkt. #714, 723, 742, 756). On September 18, 2024, the Bankruptcy Court held a one-day bench trial at which it received evidence and took testimony on the motion. (Bankr. Dkt. #807). Post-trial briefing followed. (Bankr. Dkt. #808-814, 825).

### 3.   Judge Jones's Decision

On February 14, 2025, Judge Jones issued a written decision in the matter. (Bankr. Dkt. #840). *See generally In re Kossoff PLLC*, 667 B.R. 405 (Bankr. S.D.N.Y. 2025). Six days later, the Bankruptcy Court followed with an Order. (Bankr. Dkt. #843). In sum, Judge Jones "conclude[d] that the IRS has a valid claim for the 2015 tax year." (Decision 10). Specifically, Judge Jones determined that:

i. the Trustee has the power the bring the Motion (*id.* at 15-16);

ii. the Bankruptcy Court has the power to determine the amount of taxes due (*id.* at 16-18);

iii. the Bankruptcy Court would exercise its discretion to determine Debtor's tax liability (*id.* at 18);

iv. the Trustee and the IRS each has put forth competent evidence to support the Motion (*id.* at 19-25);

v. the IRS has the authority to allocate the Disputed Payment as it did (*id.* at 25-28);

vi. the release of the tax lien did not discharge Debtor from its tax liabilities (*id.* at 28-29);

8

vii.    the payments that Debtor made could not prevent the First Assessment from reappearing after the IRS's last reallocation of the Disputed Payment (*id.* at 29-31);

viii.    the Second Assessment is valid (*id.* at 31-33);

ix.    the fact that the IRS issued the First and Second Assessments separately does not affect their validity (*id.* at 33-35); and

x.    the Amended Claim relates back to the filing date of the Original Claim (*id.* at 35-37).

### 4.    The Appeal

On March 20, 2025, Mr. Kossoff — but none of the other interested parties — filed in this Court a notice of appeal from Judge Jones's Decision. (Dkt. #1).  The crux of Mr. Kossoff's argument is that the Bankruptcy Court erred when it determined that the IRS had a viable pre-petition claim against Mr. Kossoff.  (Dkt. #3 at 2-3; Kossoff Br. 2-4).  Mr. Kossoff does not contest the existence of the Assessments (Kossoff Br. 3), the jurisdiction of the Bankruptcy Court to adjudicate the issues presented (*id.*), or the Bankruptcy Court's determination that the Amended Claim relates back (IRS Opp. 17 n.5).

Instead, Mr. Kossoff raises four challenges.  *First*, he contests the Bankruptcy Court's determination that the IRS's claim is *prima facie* valid and supported by sufficient evidence.  (Kossoff Br. 19-22; *see* Decision 19-25).  *Second*, he posits that neither the First nor Second Assessment could form the basis for an allowable claim because the IRS had previously certified that Debtor's 2015 tax liabilities were satisfied.  (Kossoff Br. 22-24; *see* Decision 28-29).  *Third*, he argues that Debtor's payments permanently extinguished the

First Assessment. (Kossoff Br. 25-27; *see* Decision 29-31). *Fourth*, he asserts that the Second Assessment is invalid. (Kossoff Br. 27-30; *see* Decision 31-33).

The same day Mr. Kossoff filed his notice of appeal, he filed a designation of bankruptcy record on appeal (Dkt. #3) and a request to proceed *in forma pauperis* (Dkt. #2). On March 24, 2025, the Court granted Mr. Kossoff's request to proceed *in forma pauperis* (Dkt. #4) and entered a scheduling order (Dkt. #5). On April 14, 2025, the Trustee filed the Bankruptcy Court trial exhibits on the docket (Dkt. #10). Briefing proceeded with limited extensions. (*See* Dkt. #9, 14). On May 2, 2025, Mr. Kossoff filed his brief. (Dkt. #11). On July 7, 2025, both the Government (Dkt. #15) and the Trustee (Dkt. #16) filed their oppositions. Mr. Kossoff filed his reply on August 5, 2025. (Dkt. #19).

## DISCUSSION

### A.    Standard of Review

A district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *In re Bernard L. Madoff Inv. Secs., LLC*, Nos. 15 Civ. 1151 (PAE), 15 Civ. 1195 (PAE), 15 Civ. 1223 (PAE), 15 Civ. 1236 (PAE), 15 Civ. 1263 (PAE), 2016 WL 183492, at *8 (S.D.N.Y. Jan. 14, 2016) (internal quotation marks omitted) (quoting *In re Great Atl. & Pac. Tea Co., Inc.*, No. 14 Civ. 4170 (NSR), 2015 WL 6395967, at *2 (S.D.N.Y. Oct. 21, 2015)). A district court reviews the Bankruptcy Court's findings of fact for clear error and its conclusions of law *de novo. In re Anderson*, 884 F.3d 382, 387 (2d Cir. 2018); *see also In re 22 Fiske Place*, No. 20 Civ. 1250 (MKV), 2021 WL 918763, at *3 (S.D.N.Y. Mar. 9,

2021), *aff'd sub nom.*, *In re 22 Fiske Place, LLC*, No. 21-810-bk, 2022 WL 519188 (2d Cir. Feb. 22, 2022) (summary order). It may affirm "on any ground that finds support in the record, and need not limit its review to the bases raised or relied upon in the decisions below." *In re 22 Fiske Place*, 2021 WL 918763, at *3 (internal quotation marks omitted) (quoting *In re Dana Corp.*, 412 B.R. 53, 56 (S.D.N.Y. 2008)).

While "a court is ordinarily obligated to afford a special solicitude to *pro se* litigants," a "lawyer representing himself ordinarily receives no such solicitude at all." *Tracy* v. *Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010). Mr. Kossoff is thus "not entitled to any special solicitude as a *pro se* litigant because he is a recently disbarred attorney." *Salis* v. *Dopico*, No. 24-1066-cv, 2025 WL 880407, at *1 (2d Cir. Mar. 21, 2025) (summary order).

## B.      The IRS Claims Are *Prima Facie* Valid

Mr. Kossoff first argues on appeal that the Trustee and the IRS failed to establish that the IRS Claims are *prima facie* valid and supported by sufficient evidence. (Kossoff Br. 19-22). In point of fact, the IRS provided evidence to support its amended proof of claim, which evidence the Bankruptcy Court correctly credited, and the objectors did not meet their burden to disprove Debtor's tax liability.

### 1.      The IRS Properly Filed and Executed Its Claims

"A properly filed and executed proof of claim constitutes prima facie evidence of the validity and amount of the claim." *In re Residential Cap., LLC*, 563 B.R. 477, 486 (S.D.N.Y. 2016), *aff'd*, 706 F. App'x 16 (2d Cir. 2017)

11

(summary order); *United States* v. *Rozbruch*, 28 F. Supp. 3d 256, 263 (S.D.N.Y. 2014) (collecting cases); *accord* Fed. R. Bankr. P. 3001(f).  As relevant here, "[f]ederal tax assessments are presumed to be correct and constitute prima facie evidence of liability," and "[t]he taxpayer bears the burden to prove that the assessment was incorrect."  *In re WorldCom, Inc.*, 723 F.3d 346, 352 (2d Cir. 2013).  "This burden applies within bankruptcy proceedings," *id.* (citing *Raleigh* v. *Ill. Dep't of Revenue*, 530 U.S. 15, 26 (2000)), including in proceedings under 11 U.S.C. § 505, *see, e.g.*, *In re Tsai*, No. 10-10083 (RTL), 2012 WL 4762013, at *4 (Bankr. D.N.J. Aug. 21, 2012); *In re PT-1 Commc'ns, Inc.*, 447 B.R. 115, 137 (Bankr. E.D.N.Y. 2011) ("The Trustee has not cited any authority to support his assertion that the Debtors' request under § 505(b) results in an exception to the well-established rule that the taxpayer bears the initial burden of proof in a tax refund action."), *rev'd on other grounds sub nom.*, *United States* v. *Bond*, 762 F.3d 255 (2d Cir. 2014).

Thus, the IRS Claims, if "properly filed and executed," qualify as *prima facie* evidence of the claims' validity.  *In re Residential Cap., LLC*, 563 B.R. at 486 (citing Fed. R. Bankr. P. 3001(f)).  Here, there is no evidence suggesting that the IRS Claims were improperly filed or executed:  Nowhere does Mr. Kossoff allege that the IRS failed to comply with the Federal Rules of Bankruptcy Procedure.  (*See* Decision 19).

### 2.    The IRS Claims Are Supported by Sufficient Evidence

Beyond procedural correctness, the IRS has offered ample support for the *substance* of its claims.  "Courts in this circuit routinely consider IRS tax

transcripts as competent evidence of tax liability.  In fact, 'it is well established that … a computer printout of a taxpayer's transcript of account, absent a showing of irregularity, provides sufficient verification of the taxpayer's outstanding liability.'"  *United States* v. *Wales*, No. 14 Civ. 864 (GWG), 2017 WL 2954683, at *5 (S.D.N.Y. July 11, 2017) (alteration adopted and citations omitted) (quoting *United States* v. *Martynuk*, No. 13 Civ. 4110 (KPF), 2015 WL 328100, at *5 (S.D.N.Y. Jan. 26, 2015)); *see also Sedlmayr* v. *United States*, No. 4:18 Civ. 1826 (RLW), 2020 WL 6683069, at *8 (E.D. Mo. Nov. 12, 2020) ("IDRS transcripts are government business records that are admissible under the public records exception to the hearsay rule, and … [a]bsent 'clear evidence to the contrary,' the Court may presume that the government employees who recorded the information shown on them discharged their official duties and complied with 'all necessary prerequisites to the validity of official action.'" (internal citation omitted) (quoting *United States* v. *Ahrens*, 530 F.2d 781, 785-86 (8th Cir. 1976))).

Here, the IRS provided an IDRS tax transcript and other documents corroborating Debtor's outstanding tax liability.  (Sylvia Decl. ¶ 3).  No irregularity in the documentation is present:  The information in the IDRS transcript is consistent with the other IRS documentation in the record (*see* Sylvia Decl. ¶ 25; Tr. 106-08), including the notice that informed Debtor of the First Assessment (*see* TX 45), and the Form 3552 that reflects the Second Assessment (*see* TX 11).  Additionally, the Amended Claim is consistent with

13

Debtor's internal records, as confirmed by the Trustee and his professionals. (Sylvia Decl. ¶ 26 & n.5; Sylvia Dep. 193-99).

The IRS has also supported its proof of claim with sworn written and oral testimony from Ms. Sylvia, who verified and explained relevant documents and responded to questions raised by the objectors. (Sylvia Decl. ¶ 3). Courts regularly rely on IRS Bankruptcy Specialists like Ms. Sylvia because they can interpret IDRS transcripts and explain how the IRS translates those transcripts into proofs of claim. *See, e.g., Conklin* v. *U.S. Dep't of Treasury*, No. 21 Civ. 137 (SPB), 2022 WL 2835708, at *3 (W.D. Pa. July 7, 2022); *United States* v. *Schmidt*, No. 2:14 Civ. 237 (TOR), 2016 WL 6516872, at *3 (E.D. Wash. Nov. 1, 2016); *Miles* v. *Internal Revenue Serv.*, Civil Action No. 06-1275 (CKK), 2007 WL 809789, at *2 (D.D.C. Mar. 15, 2007); *see also In re Thiessen*, 606 F. Supp. 3d 65, 68 (S.D.N.Y. 2022) ("Particular deference is given to a bankruptcy court's findings on credibility." (internal quotation marks omitted) (quoting *In re Portaluppi*, 609 F. App'x 30, 31 (2d Cir. 2015) (summary order))).

No participant in this litigation, including Mr. Kossoff, has presented any evidence demonstrating inconsistencies or inaccuracies in the IRS's documentation. (*See* Decision 21-22). Given the lack of such evidence, the Court holds that the Bankruptcy Court's factual determination of the correctness of the IRS's documentation was not erroneous, much less clearly erroneous. *See In re 22 Fiske Place*, 2021 WL 918763, at *3. Given the ample support for the IRS claims, the Court agrees with Judge Jones that they are *prima facie* valid. (*See* Decision 19-25).

### 3.     Mr. Kossoff's Objections Are Unpersuasive

Mr. Kossoff's main argument against the validity of the IRS Claims is that the presumption of correctness that federal tax assessments usually enjoy should not apply here due to mistakes the IRS made in calculating Debtor's outstanding liability in the Original Claim.  (Kossoff Br. 20).  And since there should be no presumption of correctness, he argues that the IRS Claims are invalid because they do not contain "true and accurate copies of each of the assessments" in the form of official Assessment Certificates.  (*Id.*).[4]  Mr. Kossoff's argument fails at both steps.

At the first step, Mr. Kossoff fails to articulate why miscalculations of liability in the Original Claim, which were later corrected in the Amended Claim, are a basis for finding "irregularity" necessary to question the validity of the Assessments.  *See Martynuk*, 2015 WL 328100, at *5 (internal quotation marks omitted) (quoting *McLaine* v. *Comm'r*, 138 T.C. 228, 241 (2012)).  (*See* Kossoff Reply 6 (making conclusory allegations of "irregularities" but avoiding specifics beyond the IRS's "admitted miscalculations")).  On the contrary, the careful process by which the IRS arrived at the corrected liability figure

---

[4]     The Government asserts that Mr. Kossoff waived his ability to argue that the IRS should have produced Assessment Certificates because he did not raise the issue below.  (IRS Opp. 23 & n.7).  That may be the case, but Mr. Kossoff argues that he did not make this argument because the exhibits were mislabeled by Appellees below.  (Kossoff Reply 8-9).  The Court declines to rule on the issue of waiver because Mr. Kossoff's substantive argument is meritless.  *See, e.g.*, *Adrea, LLC* v. *Barnes & Noble, Inc.*, No. 13 Civ. 4137 (JSR), 2016 WL 859685, at *1 n.2 ("[T]he Court need not reach the waiver issue because it denies [defendant]'s motion on the merits."); *United States* v. *Kaufman*, No. 3:18 Civ. 787 (KAD), 2022 WL 19334, at *2 (D. Conn. Jan. 3, 2022) ("[B]ecause the Court finds [defendant]'s substantive arguments to be without merit, it need not take up the issue of whether his arguments were waived.").

supports the Amended Claim's accuracy and undermines any claim of error by Mr. Kossoff. (*See* Sylvia Decl. ¶¶ 14-26 & n.5; Sylvia Dep. 193-99; Tr. 106-08). Because Mr. Kossoff did not identify any irregularity in the Amended Claim or Assessments, the Bankruptcy Court correctly determined that the Amended Claim was *prima facie* valid.

Mr. Kossoff's argument fails on the second premise as well. Even if the Court found a reason to question the calculations in the Amended Claim based on mistakes in the Original Claim, the production of Assessment Certificates here would be unnecessary. In arguing otherwise, Mr. Kossoff improperly conflates the *evidence* used to prove an assessment with the assessment itself. For example, Mr. Kossoff asserts that the Trustee and the IRS made "observations as to the need for the introduction of both of the tax assessments," so he subsequently questions why Assessment Certificates were never produced. (Kossoff Reply 4). But, as discussed above, Assessment Certificates are not the only evidence on which a party can rely to establish the existence and details of a tax assessment. *See Martynuk*, 2015 WL 328100, at *5 (holding that the Government need not produce tax returns to satisfy its burden of production). As Mr. Kossoff recognizes, all parties agree that evidence of the Assessments is necessary to establish the validity of the IRS Claims. (*See* Kossoff Reply 4). Mr. Kossoff errs, however, in suggesting that the only sufficient evidence would be Assessment Certificates themselves. *Cf., e.g., Purdie* v. *Graham*, No. 09 Civ. 8116 (NRB), 2010 WL 3912732, at *8 n.23

16

(S.D.N.Y. Sept. 16, 2010) ("[P]hysical evidence is not required to establish guilt." (citing *United States* v. *Gonzalez,* 110 F.3d 936, 940-41 (2d Cir. 1997))).

Contrary to Mr. Kossoff's contention, the Bankruptcy Court was correct in deciding that the IDRS transcripts, in conjunction with sworn testimony and other consistent documents, established the existence, timing, and validity of the Assessments. (*See* TX 10, 11, 45; Sylvia Decl. ¶¶ 5, 8, 20-21, 26-30 & n.5). *See Malkin* v. *United States,* 243 F.3d 120, 123 (2d Cir. 2001) (affirming a district court's "ruling that the transcripts were sufficiently reliable to be received in evidence" when the plaintiff provided only "speculations" to the contrary); *Stein* v. *United States,* 377 F. App'x 69, 70 (2d Cir. 2010) (summary order) (affirming a summary judgment ruling based on "contemporaneous entries in [the IRS's] computer system" and rejecting the taxpayer's "speculative arguments" that the entries were inaccurate).

Mr. Kossoff relies on *Brafman* v. *United States,* 384 F.2d 863 (5th Cir. 1967), a Fifth Circuit case from almost sixty years ago, to argue that the production of Assessment Certificates is necessary. (*See* Kossoff Br. 20-21). But that case is inapposite because it specifically dealt with a dispute about the validity of an Assessment Certificate, which was "not signed by an assessment officer or by any other official," and which was already in evidence. *Brafman,* 384 F.2d at 865. In that case, requiring the production of the Assessment Certificate was sensical because the document itself was facially deficient in the record. *Id.* But here, Mr. Kossoff has given the Court no reason — beyond speculation, *cf. Malkin,* 243 F.3d at 123 — to doubt the

validity of the Assessments, especially given the clarity of other evidence that the IRS proffered (*see* TX 10, 11, 45; Sylvia Decl. ¶¶ 5, 8, 20-21, 26-30 & n.5).

In short, while Mr. Kossoff claims that the Bankruptcy Court "established some sort of confused methodology as to allocations of various burdens of proof, production, and persuasion" (Kossoff Br. 17), it is he who has failed to carry his burden to disprove Debtor's tax liability. Judge Jones was correct to determine that the IRS Claims are *prima facie* valid.

## C.    The IRS's Issuance of a Certificate of Lien Release Did Not Extinguish the Underlying Tax Liability

Beyond the IRS Claims' *prima facie* validity, Mr. Kossoff argues that the Assessments cannot form the basis of a valid claim because the IRS "released" Debtor's tax liability and "never reinstated" it. (Kossoff Br. 22-24). He bases this argument on the IRS's issuance of a certificate of release of the tax lien that secured the tax liability. (*Id.*). His argument fails because it contravenes established case law and is wholly conclusory.

The statute that authorizes the IRS to release tax liens specifies that certificates of release "shall be conclusive that the *lien* referred to in such certificate is extinguished." 26 U.S.C. § 6325(f)(1)(A) (emphasis added). The statute nowhere indicates that the release of a tax lien itself affects a taxpayer's liability. In fact, courts have repeatedly found the opposite: that "the filing of a certificate of release does not extinguish the underlying tax liability." *United States* v. *Nassar*, No. 13 Civ. 8174 (ER), 2014 WL 5822677, at *10 (S.D.N.Y. Nov. 10, 2014) (citing *Boyer* v. *Comm'r*, 86 T.C.M. (CCH) 615 (2003)); *accord United States* v. *Everoff*, No. 00 Civ. 6029 (KAM), 2014 WL 202563, at *3

(E.D.N.Y. Jan. 16, 2014) ("[A] tax lien, not the underlying liability, is released by a certificate of discharge.").[5]  Even Mr. Kossoff "concede[s] that the mere filing" of a certificate of release "does not extinguish the underlying tax liability."  (Kossoff Br. 23).

Still, Mr. Kossoff argues that "in certain cases," a certificate of release may have that effect.  (Kossoff Br. 23).  His best argument, only raised in reply, is that the "satisfaction language" in the relevant certificate of release renders it a release of Debtor's tax liability.  (Kossoff Reply 11).  Specifically, the certificate states that the "named taxpayer … has satisfied the taxes listed below and all statutory additions."  (TX 48).  But Mr. Kossoff ignores the very next sentence, which specifies that "the *lien* provided by Code section 6321 for these taxes and additions has been released."  (*Id.* (emphasis added)).  The certificate further "authorize[s]" an IRS officer "to note the books to show the

---

[5]    The cases that Mr. Kossoff cites do not contradict this point.  *Griswold* v. *United States*, an Eleventh Circuit case from thirty years ago, discusses how the IRS "release[s] a lien" that secures "tax liabilities which *were satisfied.*"  59 F.3d 1571, 1577 (11th Cir. 1995) (emphasis added).  The case nowhere suggests that a certificate of release discharges the underlying tax liability even if that liability has not been satisfied.  And *O'Bryant* v. *United States*, a Seventh Circuit case also from thirty years ago, concerns how the IRS may recover a refund it issued erroneously after a taxpayer satisfied its liability in full. 49 F.3d 340, 343-44 (7th Cir. 1995).  Like *Griswold*, *O'Bryant* makes no holding on the issue of whether releasing a lien alone also releases the underlying tax liability.

In addition, Mr. Kossoff tries to distinguish *Nassar* by pointing out that, unlike in the present case, the IRS in that case filed a revocation of the certificate of release.  (Kossoff Br. 23).  *See United States* v. *Nassar*, No. 13 Civ. 8174 (ER), 2014 WL 5822677, at *10 (S.D.N.Y. Nov. 10, 2014).  But that is irrelevant for the instant case.  As the Government points out, *Nassar* explained that a revocation would allow the IRS to "reinstate [the] lien," *id.*, but the IRS never sought to reinstate the lien it released in the instant case (*see* IRS Opp. 27 n.8).  *Nassar* thus held, and this Court agrees, that failing to revoke the certificate of release affects only whether the IRS claim is secured, not whether it is valid.

19

release of this *lien* for these taxes and additions." (*Id.* (emphasis added)).  But there is no parallel language regarding the release of tax liability.

The "satisfaction language" thus serves as an explanation for the release of the lien, not a directive to change the status of the underlying liability.  This language, in context, makes clear that the certificate has no effect on Debtor's underlying tax liability.  And precisely for this reason, courts have rejected the argument that the exact "satisfaction language" present here precludes the IRS from later determining that the taxpayer still owes the amount in question. *See, e.g.*, *In re Lewis*, 557 B.R. 233, 234, 236-39 (M.D. Ala. 2016) (considering a release with the same language as in the instant case and finding that "regardless of the issuance of a [lien release certificate], a tax liability continues until paid in full").

Moreover, as Judge Jones pointed out, it does not make sense that a lien release certificate could ever be revoked if the original certificate discharged not only the lien, but also the underlying tax liability.  (Decision 29). *See also United States* v. *DeTar*, No. 1:04 Civ. 749 (RHB), 2009 WL 2252822, at *3 (W.D. Mich. July 28, 2009) ("[I]f the releases extinguished the underlying liability, then there would be no need for § 6325 to provide a procedure for revocation of the releases and reinstatement of the liens in the event that releases are mistakenly filed.").  As such, the Court agrees with Judge Jones that the release of the lien affected only the IRS's security interest and "d[id] not extinguish the underlying tax liability." *Nassar*, 2014 WL 5822677, at *10.

20

### D.     Debtor Did Not Satisfy the First Assessment Through Payments That the IRS Reallocated to Debtor's Liability for a Different Tax Period

Mr. Kossoff next argues that various payments, including the Disputed Payment, extinguished the First Assessment, given that the IRS at one point applied the Disputed Payment to Debtor's 2015 tax liability before reallocating it to Debtor's 2016 tax liability. (Kossoff Br. 25-27). In essence, Mr. Kossoff's argument would only prevail: (i) if the allocation of the Disputed Payment to 2015 permanently extinguished the First Assessment or (ii) if the IRS had no authority to reallocate the Disputed Payment back to 2016.

The Court begins by noting that even if Mr. Kossff's argument were correct, the remedy would not be invalidation of the IRS Claims. As the Government points out, this would give Debtor an inappropriate windfall. (IRS Opp. 31 n.10). Instead, the appropriate remedy would be to permit the IRS to amend its proof of claim to add a liability for the first quarter of 2016 in the amount of the Disputed Payment, with recalculated interest and penalties. *See Untied States* v. *Cutler*, No. 02 Cr. 441 (LAP), 2021 WL 4993652, at *3 (S.D.N.Y. Oct. 27, 2021) ("But [defendant] will not be getting a free lunch: Reallocating paid taxes from 2003 to 2005 will simply leave the 2003 liabilities unresolved."). And as the Trustee points out, the Second Assessment establishes "an independent form of liability" that would not be affected by a finding that the First Assessment was satisfied. (Trustee Opp. 7-8). As it happens, Mr. Kossoff's arguments do not prevail.

1.     **The Initial Allocation of the Disputed Payment to Debtor's 2015 Tax Liability Did Not Permanently Extinguish the First Assessment**

Mr. Kossoff spends more time arguing point (i), advancing the straightforward position that "payment on a tax assessment ... extinguishes the assessment to the extent of the payment." (Kossoff Br. 25 (citing *Clark* v. *United States*, 63 F.3d 83, 86 (1st Cir. 1995))). But this argument is too clever by half: The cases that Mr. Kossoff cites — specifically *Clark* and *O'Bryant* v. *United States*, 49 F.3d 340 (7th Cir. 1995), two thirty-year-old cases from outside this Circuit — are much less conclusive than his simplistic assertion indicates. As the Government points out, *Clark* and *O'Bryant* address what the IRS can do if it sends a taxpayer "an unsolicited, erroneous refund," a situation not at issue here. *See Mildred Cotler Tr.* v. *United States*, 184 F.3d 168, 171 (2d Cir. 1999) (discussing *Clark* and *O'Bryant*, among others). (*See* IRS Opp. 31-32).

To the extent that the cases are relevant, they actually undermine Mr. Kossoff's argument. They explicitly recognize that "there is a fundamental difference between money taxpayers possess as the result of an erroneous refund and money they originally owed the IRS (their tax liability): [T]axpayers who receive erroneous refunds owe the IRS 'because they have been unjustly enriched by it, not because they have not paid their taxes.'" *Clark*, 63 F.3d at 87 (quoting *O'Bryant*, 49 F.3d at 346). Thus, the cases rest their holdings — that the taxpayers' liability was previously extinguished — on the premise that any money the taxpayers still owed to the IRS did not result from unpaid taxes.

*See Clark*, 63 F.3d at 87; *Bryant*, 49 F.3d at 346 ("Because it is a refund, the money the [plaintiffs] received is not part of the taxpaying transaction as the IRS asserts.").

If the cases are relevant at all, then, they suggest that a taxpayer's assessment has *not* been extinguished if the money the taxpayer owes to the IRS is money the taxpayer "ha[s] not paid [in] taxes." *Clark*, 63 F.3d at 87 (internal quotation marks omitted) (quoting *O'Bryant*, 49 F.3d at 346). Here, unlike in *Clark* and *O'Bryant*, the money that Debtor owes stems from unpaid taxes, a fact that Mr. Kossoff does not dispute. (Tr. 235-36 (acknowledging that the total liability was never satisfied)). In other words, the "fundamental difference" that *Clark* and *O'Bryant* identify is, in fact, the same difference between the taxpayers in those cases and Debtor in this one: The former were unjustly enriched by excessive refunds, while the latter owed unpaid taxes. Thus, the taxpayers' liability in those cases was extinguished, but Debtor's liability in this case was not.

Mr. Kossoff's argument, apart from having no basis in case law, requires the Court to accept the premises that (i) a tax assessment can be extinguished even if the underlying tax liability is not, and (ii) when that happens, the IRS can no longer raise a claim against the taxpayer for the outstanding tax liability. Such acceptance would be nonsensical. "It is not the assessment, but the statutory obligation to account for, collect, or pay the tax due, that gives rise to tax liability." *In re Polichuk*, 506 B.R. 405, 427 (Bankr. E.D. Pa. 2014) (citing *Edelson* v. *Comm'r*, 829 F.2d 828, 834 (9th Cir. 1987); then *In re*

23

*Goldston*, Civ. No. 94-1279 (PFK), 1995 WL 41687, at \*3 (D. Kan. Jan. 20, 1995), *aff'd*, 104 F.3d 1198 (10th Cir. 1997); then *In re White*, 168 B.R. 825, 831 (Bankr. D. Conn. 1994)).  As long as the IRS's decision to reallocate the Disputed Payment to Debtor's 2016 tax liability was appropriate, *see infra* D.2, Debtor has not satisfied its tax liability for 2015, meaning that the First Assessment is valid.

Mr. Kossoff worries that this holding will "allow[ ] payments to be endlessly moved back and forth like some ping pong ball" (Kossoff Br. 27), which he calls an "absurd proposition" (Kossoff Reply 15).  But Mr. Kossoff's worry only comes to bear if a taxpayer's liability remains outstanding.  Once a taxpayer pays its taxes, payments cannot move.  The truly "absurd proposition" is Mr. Kossoff's — that the permissible reallocation of a payment by the IRS excuses a taxpayer from paying its remaining taxes owed.

### 2.    The IRS Had Authority to Allocate the Disputed Payment Back to 2016

Mr. Kossoff spends less time on the second argument: that the IRS lacked authority to reallocate the Disputed Payment to cover Debtor's 2016 tax liability.  (*See* Kossoff Br. 27 (making the conclusory statement that "there is absolutely no authority that supports the ability of the IRS … to years later reroute" a payment that had been previously allocated); Kossoff Reply 14 ("What is in fact wholly erroneous is the conclusion by the Court below … that Section 3.02 gave the IRS a legal basis to retransfer the Disputed Payment to another period after [the IRS's] proper re[a]llocation.")).

Specifically, Mr. Kossoff acknowledges that the IRS was initially authorized to reallocate the Disputed Payment to cover Debtor's 2015 tax liability.  (Kossoff Br. 27).  But he asserts that the IRS was *not* empowered to later return the Disputed Payment to 2016, thus leaving an unpaid liability for 2015.[6]  This argument is unavailing.  Mr. Kossoff cites no legal principles supporting his view, and the case law that exists points the opposite direction.

"Absent specific instructions, the IRS is authorized to apply partial tax payments received on behalf of taxpayers 'to periods in the order of priority that the IRS determines will serve its best interest.'"  *Cutler*, 2021 WL 4993652, at *3 (alteration adopted) (quoting IRS Rev. Proc. 2002-26 (2002)); *accord Gessert* v. *United States*, 703 F.3d 1028, 1038 (7th Cir. 2013) (holding that where "no specific written direction was provided to the IRS regarding the designation of" tax payments, an IRS revenue officer was "entitled to apply the payments in the best interest of the IRS").  Furthermore, "[a]djustments of allocations should be permitted as new information comes to the IRS" because "straitjacketing the IRS into its initial allocation decisions would be inconsistent with the goal of maximizing tax revenues."  *Davis* v. *United States*,

---

[6]    Mr. Kossoff has dropped his argument, made before the Bankruptcy Court, that his communications with the IRS required the IRS to designate the Disputed Payment to Debtor's 2016 tax liability.  (Kossoff Br. 27 ("It is agreed that ONLY Agent Rufus had the authority to allocate the Disputed Payment as she saw fit[.]")).  In any event, Judge Jones's analysis is correct.  (*See* Decision 25-27).

Furthermore, Mr. Kossoff spends ample time arguing that the IRS had the "right to transfer the Disputed Payment" to cover Debtor's 2015 tax liability.  (Kossoff Br. 26-27).  But that is not disputed, and it has no bearing on whether the *reallocation* of the Disputed Payment back to Debtor's 2016 tax liability left Debtor with a 2015 tax liability.  If anything, Mr. Kossoff's argument recognizes the power of the IRS to determine how to allocate the payments it receives.

961 F.2d 867, 879 (9th Cir. 1992); *accord Pinto* v. *United States*, 228 F. Supp. 2d 908, 912-13 (N.D. Ill. 2002).

Just as Judge Jones stated, Mr. Kossoff "essentially ask[s] the Court to order th[e] reallocation" of the Disputed Payment over seven years later. (Decision 27).  This Court, like the Bankruptcy Court, declines that invitation. "[I]t is not within the purview of the courts to order a reallocation of tax payments, following an IRS designation."  *Babcock* v. *United States*, 807 F. Supp. 2d 904, 914 (C.D. Cal. 2009) (citing *Davis*, 961 F.2d at 878).[7]  Thus, the IRS had the authority to allocate the Disputed Payment as it did, and the First Assessment remains valid.[8]

## E.    The Second Assessment Is Valid

Mr. Kossoff's final argument on appeal is that the Second Assessment is invalid for two reasons.  *First*, Mr. Kossoff argues that the Second Assessment improperly "cover[ed] the same type of tax and tax period" as the First Assessment.  (Kossoff Br. 28).  *Second*, Mr. Kossoff argues that the tax period

---

[7]    As the Government points out, *Babcock* is the only case that Mr. Kossoff cites in support of his argument on this point.  (*See* IRS Opp. 33 n.11; Kossoff Br. 26).  But that case directly contradicts his argument because it held that the IRS may generally "designate taxes as it chooses."  *See Babcock* v. *United States*, 807 F. Supp. 2d 904, 913-14 (C.D. Cal. 2009).

[8]    While Mr. Kossoff seems to recognize that the IRS did not require his consent to apply the Disputed Payment to Debtor's 2016 tax liability (*see* Kossoff Br. 27), the Court notes that Mr. Kossoff did, in fact, consent.  He admits that he initially intended for the IRS to apply the Disputed Payment to Debtor's 2016 tax liability.  (Tr. 222).  A few months later, Mr. Kossoff agreed to apply the Disputed Payment to Debtor's outstanding 2015 liability so that the IRS would release its lien.  (*Id.* at 137-38, 195-96, 206; TX 46).  In 2018, the IRS reinstated the Disputed Payment to Debtor's 2016 liability, as originally intended, leaving an outstanding balance for 2015.  (Sylvia Decl. ¶¶ 13-15; Tr. 131, 208, 222; Sylvia Dep. 69-71; TX 10, 39, 40).  And then in September 2018, about two years later, Mr. Kossoff admitted in a letter that the IRS's original allocation of the Disputed Payment to Debtor's 2015 tax liability was an "error" and agreed to pay any outstanding liability plus interest.  (TX 19).

26

listed in the Second Assessment "is incorrect" and thus "misled" Debtor.  (*Id.*).

Like his other arguments, Mr. Kossoff's final objections to the Bankruptcy

Court's ruling have no basis in law.

> **1.    The IRS Could Issue the Second Assessment Even Though It Covers the Same Tax Period and Type of Tax as the First Assessment**

On the first point, Mr. Kossoff's arguments are hard to parse.  He first

makes a general allegation that the IRS "appear[ed]" to be "unaware" of the

First Assessment when it made the Second Assessment, and this "confusion …

render[s] the [Second] Assessment null and void."  (Kossoff Br. 28).  The Court

is unsure why this "confusion" would void the Second Assessment, and Mr.

Kossoff cites to no case law — or facts — to support this assertion.

Read most generously, Mr. Kossoff's argument appears to be the

following:  (i) There is a difference between an additional assessment, such as

the Second Assessment, and a "supplemental assessment" under 26 U.S.C

§ 6204 (Kossoff Br. 29 (discussing when the IRS "could make a supplemental,

as opposed to a second assessment")); (ii) additional "assessments covering the

same type of tax and tax period" as earlier assessments are not permitted (*id.*

at 28-29 (arguing that the IRS is "precluded from charting a … course" other

than issuing a supplemental assessment)); and (iii) the Second Assessment

here does not qualify as a supplemental assessment under § 6204.  All three

premises fail.

On the first premise, Mr. Kossoff cites no case law to support the view

that there is a difference between a second, or additional, assessment and a

supplemental assessment under § 6204.  Indeed, the Court is unaware of any case where a tax assessment was found not to qualify as a supplemental assessment under § 6204 just because the IRS did not use the word "supplemental" in reference to it.  Mr. Kossoff relies on nothing but bare assertions for his contrary argument.  (*See* Kossoff Br. 28 (arguing that the Second Assessment is invalid because it was "separate and distinct" "rather than" "a Supplemental Assessment" under § 6204)).

But Mr. Kossoff ignores the text of § 6204.  That provision is broad:  "The Secretary may, at any time within the period prescribed for assessment, make a supplemental assessment whenever it is ascertained that any assessment is imperfect or incomplete in any material respect."  26 U.S.C. § 6204(a).  Nowhere does the statute require a specific designation by the IRS.  Nor does it demand that the IRS follow a specific procedure to issue a supplemental assessment.  The Court thus rejects the superficial distinction that Mr. Kossoff tries to draw between a "supplemental assessment" and an additional assessment.  (*See* Kossoff Br. 28).

On the second premise, Mr. Kossoff misstates the law.  To argue that assessments "covering the same type of tax and tax period" as earlier assessments are not permitted (Kossoff Br. 28-29), Mr. Kossoff relies on two cases.  *First*, he cites *Johnson* v. *United States*, but that case concerned whether the IRS could "make a supplemental assessment pursuant to 26 U.S.C. § 6204 while litigating the validity of the underlying assessment."  123 F.3d 700, 701 (2d Cir. 1997).  Ultimately, the *Johnson* Court adopted a

28

permissive reading as to when the IRS could issue supplemental assessments, which reading contradicts Mr. Kossoff's argument that only one assessment can exist for a given period. *See id.* at 704 ("[W]e believe that Congress intended to allow the IRS to correct errors in assessments by making a curative assessment pursuant to § 6204 whenever it becomes aware of a colorable challenge to the validity of the underlying assessment.").

*Second*, Mr. Kossoff relies on *O'Bryant*, noting that court's statement that "a second assessment is not permitted because the original assessment still exists and there cannot be two valid assessments for the same tax liability" (*id.* at 29 (internal quotation marks omitted) (quoting *O'Bryant*, 49 F.3d at 343 n.6)). But the quote that Mr. Kossoff cites contradicts his own position. It recognizes that an additional assessment is valid if it does not assess the "same tax liability." *O'Bryant*, 49 F.3d at 343 n.6.

This language is far from Mr. Kossoff's assertion that an additional assessment is not permitted if it "cover[s] the same type of tax and tax period." (Kossoff Br. 28-29). Instead, *O'Bryant*'s statement is, at its core, another way of relaying the standard in § 6204. In fact, *O'Bryant* specifically explains that the additional assessment in that case did not qualify as a supplemental assessment under § 6204 because the Government saw "no problem" and "no deficiency" in "the original assessment." *Id.* *O'Bryant* certainly leaves open the possibility that an additional assessment could be valid as long as it is based on a "problem" in the original assessment or does not apply to the "same tax liability." *Id.*

That is an apt segue to the third premise, which is that the Second Assessment fails under § 6204 and is an improper additional assessment under *O'Bryant* because it covers the "same tax liability" as the First Assessment.  Mr. Kossoff does not explain why this is the case, instead relying on the bare assertions discussed above.  But the Court disagrees on both fronts:  The Second Assessment (i) qualifies as a proper supplemental assessment under § 6204 and (ii) does not cover the "same tax liability" as the First Assessment.  On the § 6204 issue, the Court agrees with the Bankruptcy Court that § 6204 is "permissive, and it appears to authorize the steps the IRS took in this case."  (Decision 34).

In addition, applying the language of *O'Bryant*, the Assessments here do not apply to the "same tax liability."  *O'Bryant*, 49 F.3d at 343 n.6.  In *O'Bryant*, the second assessment not only pertained to the "same type of tax and tax period" (Kossoff Br. 29), but also "dollar-for-dollar duplicated the first one" (Decision 34).  By contrast, the Assessments in the instant case may pertain to the same type of taxes and the same period, but they do not overlap.  The First Assessment involves taxes the Debtor indicated that it owed in Form 941 (Syvia Decl. ¶ 21; TX 27), whereas the Second Assessment involves taxes the IRS assessed because Debtor underreported its employees' taxable wages, as revealed through a CAWR review (Sylvia Decl. ¶ 21; TX 10, 45; Tr. 139-40).  Therefore, because it pertained to a different tax liability, the Second

Assessment's validity is not called into question by the existence of the First Assessment.[9]

### 2. The Second Assessment Was Properly Assessed in the Fourth Quarter of 2015 Regardless of When the Shortfall in Taxes Arose During the Year

Separately, Mr. Kossoff argues that the Second Assessment was invalid because it "improperly reflects that the tax liability specified therein was incurred in the fourth, as opposed to the [third] [q]uarter of 2015," which "confused and misled" Debtor. (Kossoff Br. 29-30). But the main issue here is that the Second Assessment was properly made in the fourth quarter of 2015.

Mr. Kossoff's position is based on a misunderstanding of the CAWR review that led to the Second Assessment. Because CAWR reviews consider employers' total annual reported withholdings on four quarterly Forms 941 together, any resulting assessment does not attempt to identify whether an annual shortfall occurred in a single quarter or was spread throughout the calendar year. (Sylvia Decl. ¶ 33; Tr. 148 ("The CAWR assessment, again, is a combined annual wage reporting. The only way that we would know that there was a discrepancy is after all the W-2s and the W-3 and all four quarters' tax returns are filled.")).

---

9      As the Government points out, "Under Kossoff's erroneous view, the IRS would not be able to (even though it regularly does) make an original assessment based on the taxpayer's filed tax return, and then seek to impose additional tax liability following an audit or other review." (IRS Opp. 34). *See Principal Life Ins. Co.* v. *United States*, 95 Fed. Cl. 786, 792 (2010) (noting that the IRS may make a supplemental assessment under § 6204 "after an audit[ ] finds that there is a tax deficiency").

31

Recognizing this reality, IRS rules require the agency to issue assessments for shortfalls identified through CAWR reviews in the last quarter of the year.  (Sylvia Decl. ¶ 33; Tr. 148; *see* Internal Revenue Manual § 5.1.15.7.2(2) ("If the wages on the returns for a given year total less than the sum of the W-2 wages for that year and the taxpayer does not respond to notices, an increase in tax is made on *the last available quarter of the year for that return.*" (emphasis added))).  As the Tax Court explained, when a CAWR reveals "an underpayment[,] an additional assessment is made *on the last available quarter of the relevant tax year.*"  *Pac. West Fin. Ins. Co.* v. *Comm'r*, 101 T.C.M. (CCH) 1686, 2011 WL 2516160, at *2 n.3 (2011) (emphasis added).

In short, Judge Jones correctly explained that accepting Mr. Kossoff's view "would present a programmatic challenge for the IRS," because a CAWR review "cannot assign [an identified] deficiency to a given calendar quarter." (Decision 32).  And as below, Mr. Kossoff "cite[s] no caselaw commanding [his desired] result."  (*Id.*).

But even if it were possible to identify a discrepancy between the quarterly period in which the IRS assessed the tax and the quarterly period in which the shortfall arose, the Second Assessment would remain valid because, as Judge Jones recognized, the statutes that impose the taxes at issue here do not do so quarterly.  (Decision 32 (citing 26 U.S.C. §§ 3101(a), 3111(a), 3402(a)(1), 3401(a), none of which mentions quarterly incrementation)).  *See Wood Harmon Corp.* v. *United States*, 206 F. Supp. 773, 777 (S.D.N.Y. 1962) (holding that an incorrect date on an assessment notice should be disregarded

32

because there was no evidence that the taxpayer was "misled by the description of the taxable period"), *aff'd*, 311 F.2d 918 (2d Cir. 1963); *see also Est. of Yaeger* v. *Comm'r*, 889 F.2d 29, 35 (2d Cir. 1989) ("[M]istakes in the content of [a] notice [of deficiency] 'which do not frustrate its purpose, are negligible.'" (quoting *Olsen* v. *Helvering*, 88 F.2d 650, 651 (2d Cir. 1937))).[10]

Of course, Mr. Kossoff alleges that he was "confused or misled" by what he perceived as the IRS's mistake. (Kossoff Br. 30). Any such confusion would be irrelevant because this Court holds the IRS's action to be proper. *See supra*; *see also Est. of Yaeger*, 889 F.2d at 35 (noting that when there is a "mistake" in a notice, the test is "whether the taxpayer was justifiably misled or deceived by [the] mistake"). But even assuming that the IRS made a mistake, Mr. Kossoff has not proven that he was "confused or misled" by the purported mistake such that the Second Assessment is invalid. (Kossoff Br. 30).

At most, Mr. Kossoff vaguely asserts that he "would have made arrangements" had he known that the Second Assessment related to the third quarter rather than the fourth quarter of 2015. (Tr. 211). This speculative testimony does not explain why Debtor should be excused from paying the taxes that Mr. Kossoff admits that it did not pay. Because there is no evidence "objective[ly]" showing that Mr. Kossoff was "justifiably misled or deceived by a mistake" in the Second Assessment, *Est. of Yaeger*, 889 F.2d at 35, the Court

---

10    Moreover, as the Bankruptcy Court held, the limitations period is the same whether the Second Assessment applies to the third or fourth quarters of 2015 because "the statute of limitations for assessing these taxes runs from the return date as defined by statute, not the end of the quarter in which the taxes accrued." (Decision 33 (citing 26 U.S.C. § 6501(b)(2))).

rejects this argument as well.  In sum, each of Mr. Kossoff's arguments as to

why the Bankruptcy Court erred fails on both the law and the facts.

## CONCLUSION

For the reasons set forth above, the Order of the Bankruptcy Court is

AFFIRMED, and the IRS's Amended Claim is allowed.

The Clerk of Court is directed to terminate all pending motions, adjourn

all remaining dates, and close this case.  The Clerk of Court is further directed

to mail a copy of this Order to Mr. Kossoff at the following address:

> Mitchell Kossoff
> DIN # 22-B-2108
> Groveland Correctional Facility
> Housing Unit: L2-26
> 7000 Sonyea Road
> P.O. Box 50
> Sonyea, NY 14556

SO ORDERED.

Dated:     January 5, 2026
           New York, New York

_____
     KATHERINE POLK FAILLA
     United States District Judge